[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, (d.o.b. 2/1/47) and the defendant wife, whose birth name is Harden, (d.o.b. 12/8/47) married on March 22, 1968 in St. Louis, Missouri. The plaintiff began a career in radio broadcasting in 1970, which led to CBS radio in New York City in 1972, Philadelphia during 1977 and 1978, Chicago in 1979 and 1980. The plaintiff returned to New York City in 1980. In 1985 he was assigned to San Francisco for nine months, returning to New York until February 1, 1996 when, after 23 years with CBS, he was released from his position as Vice-President of the 13 FM stations located in the U.S.A. CT Page 8675
In October, 1996 the plaintiff found employment with Westwood One Radio Networks in New York as sales vice-president, a lesser job. He was then demoted to New York sales manager. There was no written employment contract and no understanding as to any future bonus.
By stipulation dated June 3, 1997 and filed with the court, the parties stipulated that the plaintiff had become employed by World Space Management Corporation at an annual salary of $150,000 with an annual bonus potential up to $40,000 based on performance. His semi-monthly net after tax deductions is $4,433.90.
Neither party brought any assets to the marriage. After living in a rental apartment while both parties worked two jobs, they were able to buy their first home in Port Chester, New York. After successive homes in Radnor, Pennsylvania and Chicago, they eventually acquired their present home in Darien, known as 50 Coachlamp Lane, for $209,000.
The plaintiff acknowledged at trial that it was through the parties' joint efforts that enabled them to acquire the home. Substantial improvements were made, utilizing a $40,000 bonus paid to the plaintiff, $60,000 from a house equity loan and an inheritance. The property is now valued at $480,000, by stipulation of the parties, subject to mortgage totaling about $129,000, with net equity of $350,000. (Plaintiff's Exhibit #1).
The parties have three children, Christopher, born September 24, 1968, Rod, born February 1, 1972 and Stephanie, born July 30, 1974. While attending to the children the defendant worked nights initially and then obtained employment as a special education aide. After moving to Darien the defendant worked in the public school cafeteria until 1984.
The defendant obtained a B.S. in dental hygiene from University of Bridgeport in 1988 after attending classes from 1984. About a dozen years ago the defendant began work for Dr. Bruce Denker. She initially worked three days weekly, often beginning before 9 a.m., working through the lunch hour and sometimes staying after 5 p. m. She was able to expand her work schedule to four and eventually to five or six days.
Dr. Denker testified that the defendant, in May or June, 1996, reduced her work schedule and utilized the office copier to copy hundreds of personal papers. The doctor also noticed that the CT Page 8676 defendant's mind was on other things, was sobbing and complained that her life was a shambles due to the divorce. The defendant took August vacation time and did not return to work. The defendant had been earning $30,000 annually.
The plaintiff admitted having an affair in 1983 when being examined during his deposition, confirming a suspicion the defendant harbored since 1983. Other testimony by the defendant leads the court to conclude the parties were or became sexually incompatible. Although a cause of the breakdown, it does not implicate fault.
In late December, 1994 the defendant discovered the plaintiff at dinner with a woman. The plaintiff left the marital home four days later. This conduct confirmed the defendant's suspicions and was a major cause of the marriage breakdown.
The defendant refused to recognize or accept the fact that their marriage had broken down irretrievably before the action was commenced in April, 1995. The court heard considerable testimony regarding the parties' behavior after the action commenced. It is irrelevant to the causes of the breakdown, Venuti v. Venuti,185 Conn. 156. However, some of the testimony was pertinent to the contempt motion brought by the plaintiff, (138.5).
The defendant omitted any reference to her 25% interest in real estate located in Dalton, Georgia on her earlier financial statements, as well as on the statement dated March 12, 1997 filed at the start of the trial. On April 9, 1997 the defendant admitted the parcel had a fair market value of $97,000. (See defendant's Exhibit A and plaintiff's Exhibit #18).
The defendant has since conveyed her interest to the parties' children.
The defendant also reduced to her own control $111,000 from a People's Bank account, $59,000 from the sale of CBS stock and a tax refund check for $13,000.
The court heard testimony from two gynecologists, one called by the plaintiff and one called by the defendant. The plaintiff's expert used the clinical definition of menopause whereas the defendant's expert addressed the mental and emotional fall-out some women experience, including the defendant. The court concludes such of the defendant's irrational behavior is attributable to the CT Page 8677 stress of marriage breakdown occurring during the onset of menopause. The court accepts the opinion of the defendant's doctor, Carol Upright, M.D., that the defendant is emotionally unstable and incapable of holding a job at this time.
The plaintiff has a vested pension with CBS, Inc. (Plaintiff's Exhibit 17) valued at $303,192 as of June, 1997.
The plaintiff has a CBS employee investment fund valued at $746,000 by the plaintiff as of June, 1997 (See plaintiff's Exhibit #7).
The defendant asserts she has been paying $2,200 annually on a life insurance policy that originated from the plaintiff's employment at CBS. The plaintiff professes ignorance of its existence. The plaintiff is willing to assign ownership to the defendant who is the named beneficiary.
On May 15, 1995 the court entered a temporary order by Stipulation (#111) that the plaintiff pay the defendant $2,200 every two weeks. The tax status of these payments was not determined at the time. This court is asked to rule whether the payments are taxable to the defendant.
Of the $111,000 removed from the bank by the defendant, $73,252.29 was recovered by the defendant as a result of orders entered after the defendant was found in contempt, (plaintiff's Exhibit #22). The funds are on deposit with her attorney together with $12,100 previously deposited with her attorney. The defendant also paid her attorney from the funds she withdrew.
The court, having reviewed the evidence in light of Sec. 46b-81
and Sec. 46b-82, and relevant case law, enters the following orders as part of the final judgment, the dissolution having been entered August 6, 1996.
1. The court determines the temporary order to be periodic alimony taxable to the defendant and deductible by the plaintiff. The defendant shall provide the plaintiff with signed copies of her amended returns as well as copies of the originally filed returns and the plaintiff shall pay, either directly to I.R.S. and the state, or to the defendant, so much of the taxes as are attributable to the inclusion of the temporary alimony on her returns. The defendant's claim of an arrears of October, 1996 is found not proven. CT Page 8678
2. The plaintiff shall pay to the defendant the sum of $4,500 monthly as periodic alimony, taxable to the defendant and deductible by the plaintiff, until the remarriage of the defendant, the death of either party, or future court orders. The provisions of Sec. 46b-86 (b) are applicable to the order. A contingent wage withholding order is entered.
3. The defendant is awarded sole ownership of 50 Coachlamp Lane, Darien, Connecticut. She shall hereafter be solely responsible for the mortgage, taxes, insurance and shall hold the plaintiff harmless and indemnified. The plaintiff shall transfer his interest in the premises "as is" by quit-claim deed.
The costs of deed preparation shall be borne by the plaintiff who shall also reimburse the defendant for her transfer costs.
4. The plaintiff shall retain his CBS Credit Union account, listed as $4,188, as his sole property.
5. The attorneys for the parties shall jointly hold the sum of $35,000 in escrow, to be deducted from the plaintiff's Bank of New York checking account, listed as containing $411,596 and the balance shall be divided by paying $100,000 to the defendant and the plaintiff retaining the balance as his sole property.
6. The defendant is awarded 50% of the plaintiff's CBS pension. The court retains jurisdiction to execute any QDRO necessary.
7. The plaintiff's CBS employee investment fund account, listed as $745,886 shall be divided by transferring to defendant a share valued at $203,337. The court retains jurisdiction for any QDRO needed.
8. The parties have IRA accounts of equal value. Each party shall retain the accounts as presently owned.
9. The defendant shall retain the funds presently escrowed by her attorney as per court order, as her sole property.
10. The defendant shall retain her checking account.
11. The court makes no order regarding the People's Bank account divided on or about November, 1994 nor does the court make any order regarding the New York State tax refund. Whatever the CT Page 8679 defendant received from these sources she may keep as her sole property.
12. The U.S. Savings Bonds totaling $25,000 shall be divided equally between the parties.
13. The parties' children now own the defendant's interest which she had in the Dalton, Georgia real estate. The court declines to make any order regarding the transfer and notes the defendant has not benefited from it.
14. The parties' joint tax liability to New York State shall be settled from the escrow account ordered above in #5.
15. The debts listed by the defendant shall be satisfied by her without contribution from the plaintiff.
16. The life insurance policy, naming the plaintiff as the insured for $800,000 with the defendant as beneficiary shall be assigned to the defendant as owner. If the original contract is lost the parties are each ordered to execute such documents as may be necessary to obtain reissue of the contract. The defendant shall be solely responsible for the premiums when due.
17. The plaintiff shall assign 200,000 frequent flyer miles to the defendant.
18. The plaintiff shall pay to the defendant the sum of $20,000 as an allowance to defend. This sum encompasses the plaintiff's claim for $5,568.75 attorney's fees and $599.40 expenses incurred for prosection of the contempt motion.
The court finds that it need take no further action on the contempt motion.
19. The plaintiff shall pay to the defendant the sum of $25,000 for her share of the tangible personal property he has in his possession, which previously furnished the marital home.
Counsel for the plaintiff shall draft the judgment file.
HARRIGAN, J. CT Page 8680